UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| KATHY CHAPMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:06-cv-0848-JDT-TAB |
| | ) | |
| | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| AGRICULTURE, FOREST SERVICE, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ON MOTION TO DISMISS AND ALTERNATIVE MOTION FOR SUMMARY JUDGMENT (Doc. No. 20)**[1]

On August 23, 2003, Kathy Chapman and her family visited the Hardin Ridge

Recreation Area (the "Recreation Area"), which is part of the Hoosier National Forest, a

national forest managed by the United States Department of Agriculture Forest Service

(the "Forest Service").  At some point during that visit, the Chapmans stopped so that

Ms. Chapman could use the restroom, and she ascended a flight of stairs leading from

the parking area to a nearby restroom area.  At the top of the stairs, when Ms.

Chapman reached the sidewalk leading to the restroom, she tripped and fell, sustaining

severe injuries.  Pursuant to 28 U.S.C. §§ 2401(b) and 2675(a), Ms. Chapman filed a

Claim for Damage, Injury, or Death with the Forest Service on August 19, 2005.  After

the Forest Service failed to dispose of her claim within six months, Ms. Chapman

---

[1]  This Entry is a matter of public record and will be made available on the court's web
site.  However, the discussion contained herein is not sufficiently novel to justify commercial
publication.

brought this action on May 25, 2006, alleging that her injuries were caused by the negligence of Forest Service employees and seeking damages for lost wages, medical expenses, and pain and suffering.

On June 25, 2007, the Forest Service filed this motion to dismiss pursuant to Rules 12(b)(1) and (6), or in the alternative, for summary judgment.  The basis for the Forest Service's 12(b)(1) argument is the "independent contractor exception" to the Federal Tort Claims Act ("FTCA").  Because the Seventh Circuit has recently indicated that it may be appropriate to treat statutory exceptions to the FTCA as elements of the plaintiff's claim for relief, rather than as jurisdictional elements, and to analyze such a motion under Rule 12(b)(6) instead of 12(b)(1), this court will analyze all grounds for this motion under Rule 12(b)(6).  *See Palay v. United States*, 349 F.3d 418, 424-25 (7th Cir. 2003) ("More recently, however, we have questioned whether the exhaustion requirement and the statutory exceptions to the FTCA truly are jurisdictional in nature. . . . These cases suggest that the statutory prerequisites to suit and exceptions to governmental liability should instead be viewed as aspects of the plaintiff's statutory right to relief and, at the pleading stage, dealt with pursuant to Rule 12(b)(6).")  Because the parties have presented matters outside the pleadings in connection with this motion, and because these matters have not been excluded by the court, this 12(b)(6) motion will be treated as one for summary judgment and disposed of under Rule 56.  *See* Fed. R. Civ. P. 12(b).  This motion is ripe for review, and the court rules as follows.

## I.      Summary Judgment Standard

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  When ruling upon a motion for summary judgment, this court must view the evidence and all reasonable inferences from that evidence "in the light most favorable to the non-moving party."  *Washington v. Haupert*, 481 F.3d 543, 547 (7th Cir. 2007) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  If "a reasonable jury could find for the party opposing the motion based on the record as a whole," then a genuine issue of material fact exists, and summary judgment is inappropriate.  *Bekker v. Humana Health Plan, Inc.*, 229 F.3d 662, 669 (7th Cir. 2000) (internal quotations omitted).  This court's role "is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial."  *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007).

## II.     Facts for Summary Judgment

The following account of the facts includes both undisputed facts and, where facts are disputed, the evidence viewed in the light reasonably most favorable to the non-moving party, in this case Ms. Chapman.  *See Anderson*, 477 U.S. at 255; S.D. Ind. L.R. 56.1(e) ("The Court will also assume for purposes of deciding the motion that any facts asserted by the opposing party are true to the extent they are supported by

admissible evidence.")

The accident at the heart of this dispute occurred on August 23, 2003, on the premises of the Hardin Ridge Recreation Area (the "Recreation Area"), which is part of the Hoosier National Forest.  (Chapman Aff. ¶¶ 2, 10.)  Ms. Chapman had visited the Recreation Area prior to her August 2003 visit, and at the Visitor's Center, she had encountered informational materials available to the general public describing the Recreation Area's activities and facilities, including interpretive programs located at the amphitheater and the Recreation Area's beach, launch ramp, and hiking/bicycle trails.  Ms. Chapman had also noticed signs in the Recreation Area advertising the Area's activities and facilities.  (*Id.* ¶¶ 11-13.)

In August 2003, visitors on foot or bicycle were allowed to enter the Recreation Area without paying any entrance fee, but motorists were required to pay a fee (per-vehicle, not per-passenger) in order to enter and park.  (Wadzinski Second Aff. ¶¶ 3-5.)  On the day of the accident, Ms. Chapman and her family used an annual pass (the "Vehicle Entry Pass") that she had previously purchased for thirty dollars in order to enter the Recreation Area by car.  (Chapman Aff. ¶ 10.)  A concessionaire collected and retained the fee that Ms. Chapman paid for the Vehicle Entry Pass; the Forest Service did not collect such fees from the concessionaire.[2]  (Wadzinski Second Aff. ¶ 6.)

---

[2]  Ms. Chapman asserts in her affidavit that she purchased the entry directly from the Defendant, rather than from a third-party concessionaire, but there is no apparent basis of personal knowledge for this assertion.  Therefore, the court credits Mr. Wadzinski's assertion that such fees were collected and retained by a third-party concessionaire.  With respect to the motion under consideration, it will later become apparent that this distinction has no impact on Ms. Chapman's claim.

At some point during her August 23, 2003, visit to the Recreation Area, Ms. Chapman and her family stopped at a parking area so that she could use a nearby restroom.  (Chapman Aff. ¶ 3.)  A flight of stairs separated the parking area from the restroom area.  Ms. Chapman ascended that flight of stairs, and at the top, she found a dirt path leading to a new sidewalk (the "Sidewalk"), which led to the restroom area.  (*Id.* ¶¶ 3-4.)  Although the Sidewalk was "much higher" than the other steps that Ms. Chapman had just climbed, there were no warning signs or construction notices present, nor were there any hand rails or safety barriers in the area.  (*Id.* ¶¶ 6-8.)  When Ms. Chapman attempted to step from the dirt path onto the "much higher" Sidewalk, she tripped and fell, sustaining severe personal injuries.  (*Id.* ¶¶ 5, 9.)

Although the Forest Service manages the Recreation Area, no Forest Service employee performed any of the work involved in constructing or maintaining the Sidewalk.  Strauser Construction Company ("Strauser") performed all work on the Sidewalk pursuant to a contract entered into between Strauser and the Forest Service on March 31, 2003.  That contract required Strauser to perform certain restroom area renovations, including construction of the Sidewalk (in dimensions of 60 feet by 60 inches with 4 inches of thickness).  (First Lidell Aff. ¶¶ 5-8.)  Strauser also performed all work on the gravel area immediately surrounding the Sidewalk and the area between the flight of stairs from the parking area and the Sidewalk (the "Sidewalk Construction Area"); no Forest Service employee performed any of this work.  (Second Lidell Aff. ¶¶ 1-2.)  Although Strauser continued its work on the Sidewalk Construction Area only "until August 2003," the Forest Service did not authorize final payment on the contract

5

until August 25, 2003.  (First Lidell Aff. ¶ 9; Second Lidell Aff. ¶ 3.)  Therefore, the

Sidewalk Construction Area remained "under the control" of Strauser until that date, two

days after Ms. Chapman's accident occurred.  (*Id.* ¶¶ 3-5.)

## III.    Discussion

Ms. Chapman brought this action under the Federal Tort Claims Act (the

"FTCA"), 28 U.S.C. § 1346(b), alleging that the Forest Service negligently caused her

injuries by: (1) failing to maintain and repair the Sidewalk in a reasonable manner; (2)

failing to warn her of the dangerous condition that existed due to the height differential

between the steps and the Sidewalk; and (3) failing to provide handrails and safe

passageway from the camp area to the restroom area.  The Forest Service moved to

dismiss this action under Rules 12(b)(1) and 12(b)(6), and in the alternative, for

summary judgment.  The Forest Service advances two grounds in support of its motion.

First, it contends that Ms. Chapman's claim is barred by the FTCA's "independent

contractor exception," which preserves the sovereign immunity of the United States with

respect to the acts of independent contractors.  Second, the Forest Service contends

that Ms. Chapman's claim is barred by the Indiana Recreational Use Statute (the

"IRUS"), Ind. Code § 14-22-10-2, which limits the liability of those who open their land to

the general public for recreational purposes.  These arguments are addressed below.

### A.    The Independent Contractor Exception to the FTCA

The Forest Service's liability in this case is predicated entirely upon the FTCA's

limited waiver of the United States' sovereign immunity.  The FTCA provides federal jurisdiction "over damages claims against the United States 'for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment . . . .'"  *Alinsky v. United States*, 415 F.3d 639, 643 (7th Cir. 2005) (quoting 28 U.S.C. § 1346(b)).  The term "employee of the government" includes "employees of any federal agency," but the term "federal agency" expressly excludes "any contractor with the United States."  *Id.* (citing 28 U.S.C. § 2671); *see also United States v. Orleans*, 425 U.S. 807, 814 (1976).  Ms. Chapman does not argue or present any evidence to suggest that an agency relationship existed between the Forest Service and Strauser; therefore, the independent contractor exception precludes Forest Service liability for the actions of Strauser or its employees in causing Ms. Chapman's injuries.

However, even assuming that Strauser's actions played a role in causing Ms. Chapman's injuries, this does not end the analysis.  An independent contractor's partial responsibility for a plaintiff's injuries "cannot be viewed as relieving the United States from liability where the plaintiff alleges that federal employees also may have caused or contributed to the alleged tort."  *Berkman v. United States*, 957 F.2d 108, 114 (4th Cir. 1992) (upholding dismissal to the extent that plaintiff alleged that independent contractor negligently performed its duties, but remanding for consideration of claims alleging that FAA employees' negligence also contributed to plaintiff's injuries); *see also Logue v. United States*, 412 U.S. 521, 532-33 (1973) (upholding the Court of Appeals' determination that the United States was not liable for the acts of an independent

7

contractor, but remanding for consideration of the "distinct question" of government liability based on the actions of a government employee); *Alinsky*, 415 F.3d at 645-46 (holding that the independent contractor exception barred plaintiffs' claim based upon the actions of an employee of Midwest Air, an independent contractor, but independently evaluating plaintiffs' claim based on the failure of the Federal Aviation Administration to respond to a request for funding and additional air traffic controllers.) Therefore, to the extent that Ms. Chapman seeks damages for the negligence of Forest Service employees, rather than Strauser, the FTCA's independent contractor exception poses no bar to her claim.

The Forest Service relies on the following undisputed facts in support of its contention that the independent contractor exception completely bars Ms. Chapman's claims: (1) Strauser performed all work on the Sidewalk Construction Area; (2) even after work on the Sidewalk Construction Area was completed, that area remained "under the control" of Strauser until the Forest Service authorized the contract for final payment; and (3) Ms. Chapman's injury occurred within the Sidewalk Construction Area two days before the Forest Service authorized the contract for final payment. Based on these facts, the Forest Service argues that it could not have been responsible for Ms. Chapman's injuries, and that the independent contractor exception bars Ms. Chapman's claim because it could only be based upon the actions of Strauser.

Ms. Chapman does not argue that an agency relationship existed between the Forest Service and Strauser, and therefore, the Forest Service is correct that the independent contractor exception precludes Ms. Strauser's claims to the extent that

8

those claims are based on Strauser's work in the Sidewalk Construction Area. However, Ms. Chapman contends that her negligence claims do not depend upon the actions of Strauser, but instead are based on the independent actions of Forest Service employees.  Specifically, Ms. Chapman maintains that the Forest Service was negligent in: (1) failing to maintain and repair the Sidewalk Construction Area after Strauser completed its work; (2) failing to warn visitors of the dangerous condition that existed as a result of the height differential between the dirt path and the Sidewalk; and (3) failing to provide handrails that would ensure safe passageway to the restroom area.

        The evidence, viewed in the light most favorable to Ms. Chapman, does not compel a conclusion that Ms. Chapman's claims depend upon the actions of Strauser. Ms. Chapman does not argue or present evidence to suggest that Strauser negligently performed its construction work; rather, her negligence claims are premised on the independent acts (or omissions) of the Forest Service in failing to maintain/repair the Sidewalk Construction Area, failing to warn regarding the dangerous Sidewalk height differential, and failing to provide handrails to ensure safe passage from the flight of stairs to the restroom area.  Although it is undisputed that the Sidewalk Construction Area remained "under the control" of Strauser until August 25, 2003, the Forest Service has neither argued nor presented evidence that Strauser controlled this area to the exclusion of Forest Service employees.  In fact, the undisputed facts, viewed in the light reasonably most favorable to Ms. Chapman, suggest the opposite inference; construction work on the Sidewalk Construction Area was completed sometime around early August, the Area offered unencumbered access to visitors at the time of Ms.

Chapman's accident, and there were no construction signs or barriers present.

These facts are readily distinguishable from a Second Circuit case, *Roditis v. United States*, 122 F.3d 108 (2d Cir. 1997), that the Forest Service cites in support of its argument.  In *Roditis*, the plaintiff slipped and fell on a patch of ice on a flight of stairs outside a United States Post Office in Great Neck, New York.  At the time of the accident, an independent contractor was constructing an underground parking area at the post office.  The plaintiff claimed that he slipped and fell because the snow and ice had not been properly cleared.  *Id.* at 109.  The Second Circuit held that the independent contractor exception barred the plaintiff's claim, reasoning that the accident area was part of an ongoing construction site that was within the *exclusive* control of the contractor.  *Id.* ("Edgar Penny, the chief custodian of the Great Neck Post Office, on at least five occasions during his deposition, firmly and unequivocally stated that the area in which Athanasios fell was 'off limits' to postal workers and used solely by the construction workers.")  In addition, the Second Circuit rejected the plaintiff's alternative argument that state law imposed a nondelegable duty on the United States, as landowner, to ensure that the premises were safe.  The court reasoned that state law nondelegable duties cannot overcome the exceptions to liability that are expressly built into the FTCA.  *Id.* at 111-12.

Although the facts of *Roditis* may seem analogous to the present case at first glance, closer inspection reveals significant differences.  First, the *Roditis* plaintiff's claim was premised upon the alleged negligent failure to clear snow and ice from an area that was part of an ongoing construction site within the exclusive control of the

10

independent contractor.  However, Ms. Chapman's claim, to the extent that it alleges negligent failure to repair or maintain Sidewalk Construction Area, did not involve an ongoing construction site, and the Forest Service has not presented evidence that Strauser retained *exclusive* control of the Sidewalk Construction Area.  Indeed, the evidence, viewed in the light reasonably most favorable to Ms. Chapman, suggests that Strauser did not maintain exclusive control of this area at the time of Ms. Chapman's accident, because construction had been completed several weeks earlier, and the general public apparently enjoyed unfettered access to this area.  In his affidavit, Mr. Lidell, a Forest Engineer, offered no elaboration on his statement that the Sidewalk Construction Area was "under the control" of Strauser until the Forest Service accepted the work on August 25, 2003.  (Second Lidell Aff. ¶ 5.)  Unlike the chief custodian of the Post Office in *Roditis*, Mr. Lidell did not state that the Sidewalk Construction Area was "off limits" to Forest Service employees.  A rational fact-finder could conclude, based on this evidence, that Forest Service employees probably enjoyed access to the Sidewalk Construction Area at the time of Ms. Chapman's accident.

However, even if the Forest Service had presented evidence that Strauser maintained control of the Sidewalk Construction Area to the exclusion of Forest Service employees, two of Ms. Chapman's negligence claims would nevertheless survive.  Ms. Chapman's allegations regarding negligent failure to warn and negligent failure to provide handrails/safe passageway do not depend upon Forest Service access to the Sidewalk Construction Area at the time of the accident.  With respect to the former claim, the Forest Service offers no evidence to suggest that the Forest Service lacked

11

access to areas, such as the flight of stairs from the parking area, immediately leading to the Sidewalk Construction Area.  Therefore, there is no evidence to suggest that Strauser alone, and not the Forest Service, retained the capability to warn visitors of the dangerous height differential between the dirt path and the sidewalk.  Further, the claim regarding failure to provide handrails/safe passageway to the restroom area can be read as an allegation of failure to properly design sidewalk access to the restroom area; it is undisputed that the Forest Service provided the specifications for this construction project, and those specifications did not include handrails.  Therefore, this claim does not depend upon access to the Sidewalk Construction Area at the time of the accident, nor is it based solely upon Strauser's actions, and it is not barred by the independent contractor exception.

Finally, this case is distinguishable from *Roditis* because Ms. Chapman does not argue that the Forest Service is responsible for Strauser's actions based upon a state law nondelegable duty of the landowner to ensure the safety of the premises.  If Ms. Chapman had advanced such an argument, it would have failed, because "[s]tate common law principles cannot overcome" the exceptions to government liability built into the FTCA.  *See Alinsky*, 415 F.3d at 645 (citing *Logue*, 412 U.S. at 528) ("[A]s the Supreme Court in *Logue* explained, in adopting the FTCA's contractor exception to liability, Congress did not simultaneously adopt the various state exceptions to the independent contractor rule.")  However, Ms. Chapman does not make such an argument, and as explained above, her negligence claims do not depend upon a finding that the government is responsible for the negligent actions of Strauser.

For the foregoing reasons, viewing the evidence in the light reasonably most favorable to Ms. Chapman, the FTCA's independent contractor exception does not foreclose her claims against the Forest Service.

**B.     The Indiana Recreational Use Statute**

The Forest Service also argues that Ms. Chapman's claim is barred by the Indiana Recreational Use Statute ("IRUS"), Ind. Code § 14-22-10-2.  The IRUS is "intended to encourage landowners to allow the public to use their land for recreational purposes."  *Matheny v. United States*, 469 F.3d 1093, 1095 (7th Cir. 2006).  The IRUS serves this purpose by excusing landowners from liability to visitors who make certain recreational uses of the landowner's property.  *Id.* (citing Ind. Code §§ 14-22-10-2(d), (e), (g)).  However, the IRUS applies here only if Ms. Chapman entered the Recreation Area "without the payment of monetary consideration," which means "a fee or other charge for permission to go upon a tract of land."  Ind. Code §§ 14-22-10-2(b), (d)(2)(A). If Ms. Chapman did pay a fee for permission to enter the Recreation Area, then the IRUS does not protect the Forest Service from liability.  In addition, the IRUS does not apply in this case if Ms. Chapman was a "public invitee," that is, "a person who is invited to enter or remain on land as a member of the public for a purpose which the land is held open to the public."  *See McCormick v. State*, 673 N.E.2d 829, 836 (Ind. Ct. App. 1996) (quoting *Restatement (Second) of Torts* § 332)); Ind. Code § 14-22-10-2(f)(1)(B) (stating that the IRUS does not affect existing Indiana case law regarding invited guests).  The Forest Service argues that it enjoys the protection of the IRUS in this case, and Ms. Chapman counters by arguing that the IRUS is inapplicable because she

13

paid a fee for permission to enter the Recreation Area and/or she was a public invitee.

The Forest Service contends that Ms. Chapman did not pay for permission to enter and use the Recreation Area, but only for the convenience of entering by car and parking.  In support of its argument, the Forest Service points out the following facts: (1) payment of an entrance fee was not required for general entry to the Recreation Area in August 2003, and walkers and bicyclists entered without payment of any fee; (2) the fee for Ms. Chapman's annual pass was charged on a per-vehicle, not a per-passenger, basis; and (3) Ms. Chapman purchased the annual pass from a third-party concessionaire, who retained that parking fee and never passed it along to the Forest Service.  The Forest Service argues that these facts are closely analogous to the facts of *McCormick*, where the Indiana Court of Appeals held that payment of a launch and dock rental fee did not constitute payment of monetary consideration for permission go upon and use a  reservoir.  *McCormick*, 673 N.E.2d at 835.  The *McCormick* plaintiff had paid the boat launch and dock rental fee to Morse Lake Marina, a third-party concessionaire licensed to operate a marina on the reservoir, and the reservoir owner did not receive any rent or fees derived from this license.  The court reasoned that "the boat dock and launch ramp at the Marina were not the only available means of access to the reservoir," because property owners with land abutting the reservoir could launch boats from their own property without payment of a fee.  Therefore, the court concluded that the fee launch/dock rental fee was paid not for permission to use the reservoir, but for "the convenience of having a place to dock and launch the boat."  *Id.* at 835-36.

Ms. Chapman counters this argument by pointing out that, unlike the abutting

14

property owners in *McCormick* who could dock and launch their boats on the reservoir without payment of a fee, all visitors who wished to enter the Recreation Area by car were required to pay an entrance fee.  Therefore, according to Ms. Chapman, even if walkers and bicyclists could enter the Recreation Area for free, her purchase of the Vehicle Entry Pass should be viewed not merely as a parking fee, but as a fee required to obtain permission to enter the Recreation Area for all motorist visitors.

As previously noted, the IRUS defines "monetary consideration" as "a fee or other charge for permission to go upon a tract of land."  Ind. Code § 14-22-10-2(b).  The Indiana Supreme Court has cautioned that the "IRUS is in derogation of common law and must be strictly construed against limiting a claimant's right to bring suit," and therefore, "[a]bsent express declaration or unmistakable implication, [the IRUS] will not be interpreted as changing the common law."  *Drake v. Mitchell Cmmty. Schs.*, 649 N.E.2d 1027, 1029-30 (Ind. 1995).  The *McCormick* court's conclusion that the boat launch/dock rental fee was not "monetary consideration" for use of the reservoir seemed to depend, at least in part, upon the ability of other *boat owners* to access the reservoir *by boat* without payment of a fee.  In this case, there is no evidence to suggest that some motorist visitors could enter the park without payment of a fee; instead, it appears that payment of a fee was unavoidable for those who wished to access the Recreation Area by car.  Therefore, although *McCormick*'s reasoning may suggest that Ms. Chapman's purchase of the Vehicle Entry Pass might not have constituted "payment of monetary consideration" for IRUS purposes, this suggestion is far from an "unmistakable implication."  Accordingly, this court declines to find, as a matter of law,

15

that Ms. Chapman's purchase of the Vehicle Entry Pass did not constitute "payment of monetary consideration" under the IRUS, and this represents a genuine issue of material fact.

Further, even if this court found that Ms. Chapman's purchase of the Vehicle Entry Pass did not constitute payment of monetary consideration, another issue would still preclude application of the IRUS – Ms. Chapman's possible status as a "public invitee." The IRUS does not shield a landowner from liability if the plaintiff was an "invited guest," and this term includes public invitees. *See McCormick*, 673 N.E.2d at 836-37; Ind. Code § 14-22-10-2(f)(1)(B). Under Indiana law, the status of a person entering the land of another is characterized as an invitee, a licensee, or a trespasser. *McCormick*, 673 N.E.2d at 836. Unlike trespassers, both licensees and invitees have the landowner's permission to be on the land, but "invitee" status requires more than mere permission. In order to qualify as a public invitee, a member of the public must be able to point to "some inducement or encouragement to enter, some conduct indicating that the premises are provided and intended for public entry and use, and that the public will not merely be tolerated, but is expected and desired to come." *Id.* at 837.

Ms. Chapman points to her prior visits to the Recreation Area, where she encountered information materials at the Visitor's Center and signs in the Area advertising the Area's activities and facilities, as evidence that she was a public invitee. The Forest Service does not concede the admissibility of these statements from Ms. Chapman, but concedes that if the court considers these statements, then summary judgment for the Forest Service on this issue would be inappropriate. Because Ms.

16

Chapman's assertions regarding her prior visits to the Recreation Area are based on her personal knowledge, the court has no reason to conclude that these statements would be inadmissible.  These statements are sufficient to allow a rational trier of fact to conclude that the Forest Service affirmatively encouraged the public to enter the Recreation Area, and that Ms. Chapman was a public invitee.  Therefore, whether Ms. Chapman enjoyed public invitee status constitutes a genuine issue of material fact, precluding summary judgment for the Forest Service on the IRUS ground.

## IV.    Conclusion

For the foregoing reasons, the Motion to Dismiss and Alternative Motion for Summary Judgment is **DENIED.**

ALL OF WHICH IS ENTERED this 8th day of November 2007.

_____
John Daniel Tinder, Judge
United States District Court

Copies to:

Magistrate Judge Tim A. Baker

E. Davis Coots                                    Jeffrey L. Hunter
COOTS HENKE & WHEELER, P.C.        UNITED STATES ATTORNEY'S OFFICE
dcoots@chwlaw.com                          jeff.hunter@usdoj.gov

Brandon A. Gibson
COOTS HENKE & WHEELER, P.C.
bgibson@chwlaw.com

17